IN THE UNITED STATES DISCTRICT COURT
FOR THE DISTRICT SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re: : | |
| : | Chapter 7 |
| HHG CORP., A/K/A EXTREME : | |
| CHAMPIONSHIP WRESTLING, : | |
| : | Case No.  7:06-cv-04714-CLB |
| Debtor. : | |

**BRIEF FOR APPELLANTS EASTERN CHAMPIONSHIP WRESTLING, INC.
AND TOD A. GORDON**

**SPECTOR GADON & ROSEN, P.C.**
1000 Lenola Road
P.O. Box 1001
Moorestown, NJ 08057
(856) 778-8100

Attorneys for the Appellants

Of Counsel and
On the Brief
Stephen P. Pazan, Esquire
Michael J. Shavel, Esquire
Timothy J. Szuhaj, Esquire
D. Andrew Bertorelli, Jr., Esquire

i

277426-2

# **TABLE OF CONTENTS**

|  | Page |
|---|---|
| TABLE OF AUTHORITIES ……………………………………………………………ii | |
| INTRODUCTION……………………………………………………….................1 | |
| PROCEDURAL HISTORY…………………………………………………….…...3 | |
| STANDARD OF REVIEW…………………………………………………………...6 | |
| SUMMARY OF ARGUMENT ……………………………………………………7 | |
| ARGUMENT ……………………………………………………………………8 | |

The Bankruptcy Court Exceeded Its Limited Jurisdiction When It Authorized The Sale Of Assets Which Are Not Property Of The Debtor's Estate…………………………………………………….............................8

The Bankruptcy Court's Entry Of The Sale Order Is In Violation Of The Fifth Amendment To The United States Constitution As Eastern And Gordon Were Deprived Of Their Property Without Due Process Of Law And Without Just Compensation.……………………………………………11

The Bankruptcy Court Erred When It Held That The Sale Order And The APA Granted Ownership Of The Eastern Footage To WWE Even Though It Was Not Property of the Estate and the Trustee Did Not Have Legal Authority To Sell Assets Of The Appellants………………………………….14

CONCLUSION………………………………………………………………16

# **TABLE OF AUTHORITIES**

## **CASES**

*Bass v. Denney (In re Bass)*,                                                                                          Pages
    171 F.3d 1016 (5th Cir. 1999)……………………………………………………..10

*BedRoc Ltd., LLC v. United States*,
    541 U.S. 176 (2004) …………………………………………………………………9

*Celotex Corp. v. Edwards*,
    514 U.S. 300 (1995)…………………………………………………………………10

*In re Eber-Acres Farm*,
    82 B.R. 889 (Bankr. E.D. OH 1987)………………………………………………….9

*Evans v. Famous Music Corp.*,
    1 N.Y.3d 452 (N.Y. 2004)………………………………………………………..…15

*H & C Dev. Group, Inc. v. Miner (In re Miner)*,
    229 B.R. 561 (E.D. N.Y. 1999)……………………………………………………….6

*In re Ionosphere Clubs*,
    922 F.2d 984 (2d Cir. 1990), *cert. denied*, 502 U.S. 808 (1991).........................6

*Lamie v. United States Trustee*,
    540 U.S. 526 (2004)………………………………………………………………..9

*Mullane v. Central Hanover Bank & Trust Co.*,
    339 U.S. 306 (1950)……………………………………………………………..11-12

*In re Parr*,
    4 B.R. 646(Bankr. E.D. N.Y. 1980………………………………………………….10

*Sea Hawk Seafoods, Inc. v. Alaska (In re Valdez Fisheries Dev. Assoc)*,
    439 F.3d 545, 549 (9th Cir. 2006)…………………………………………………10

*South Rd. Assocs., LLC v. IBM*,
    4 N.Y.3d 272 (N.Y. 2005) …………………………………………………………..15

*Windsor v. McVeigh*,
    93 U.S. 274 (1876)…………………………………………………………………..13

*Wright v. Union Cent. Life Ins. Co.*,
    304 U.S. 502 (1938)…………………………………………………………………11

277426-2

## STATUTES AND RULES

                                                            Page

U.S. Const. amend. V……………………………………………………7, 11, 13-14

11 U.S.C. § 101, et seq……………………………………………………………3, 7, 9

11 U.S.C. § 363(b)(1)…………………………………………………..…7, 9, 11-14

11 U.S.C. § 541(a)(1)…………………………………………………………...7, 9

Fed. R. Civ. P. 60(b)………………………………………………………….5, 13

277426-2

Eastern Championship Wrestling, Inc. a Pennsylvania corporation ("Eastern") and Tod A. Gordon ("Gordon" and collectively with Eastern, the "Appellants"), by and through their counsel Spector Gadon and Rosen, P.C., file this the Brief of the Appellants in support of their appeal in the above referenced matter.

**INTRODUCTION**

Gordon is the sole owner of Eastern. Eastern is a corporation formed and existing under the laws of the Commonwealth of Pennsylvania. Eastern was formed in 1992 for the purpose of holding and promoting professional wrestling matches. Gordon is not only the sole officer and owner of Eastern; he was also part of Eastern's talent, performing on camera in numerous capacities. As part of Eastern's business it held numerous professional wrestling exhibitions which were video taped and aired on television. As a result of the video taping of the wrestling exhibitions, Eastern became the owner of the footage in the form of intellectual property (the "Eastern Footage"). The Eastern Footage contained images of Gordon. Gordon never gave a written release to any party or entity, including Eastern, HHG Corporation ("HHG" or the ("Debtor") and Worldwide Wrestling Entertainment, Inc. ("WWE" or the "Appellee"), authorizing the use of his image as contained in the Eastern Footage (the term "Eastern Footage" includes any and all rights that Gordon has to his image contained in the Eastern Footage).

In addition to his ownership of the Eastern, Gordon founded Extreme Championship Wrestling, Inc. ("Extreme"). Extreme was formed in 1994. Extreme is a corporation organized and existing under the laws of the Commonwealth of Pennsylvania. Extreme was organized for the purpose of holding and promoting

1

professional wrestling matches. The wrestling matches promoted by Extreme were also video taped and televised. As a result of the video taping of the wrestling exhibitions, Extreme become the owner of the footage in the form of intellectual property (the "Extreme Footage").

In 1994, Paul Heyman ("Heyman") joined Extreme as a creative consultant. Eventually, Heyman began to take a greater role in directing the operations of Extreme and Gordon reduced his role in the management of Extreme. With the emergence of Extreme, Eastern's role as a promoter of wrestling events ended. However, Eastern never ceased to exist as a corporate entity nor did it ever merge with or transfer its assets including Eastern's ownership of the Eastern Footage, to Extreme.

As Gordon's role in the management of Extreme decreased, Heyman took over the operation of Extreme; Gordon did not transfer any portion of his ownership interest in Extreme to Heyman or any other party, however. To this date Gordon is the sole owner of Eastern and the majority owner of Extreme and both Eastern and Extreme are separate legal entities.

Upon information and belief, Heyman, while still working for and managing Extreme, formed a competing entity for the purpose of promoting wresting matches. The business formed by Heyman is HHG.[1] HHG traded under the name "Extreme Championship Wrestling" to benefit from the name recognition generated by Heyman and Gordon's efforts in promoting Extreme. Gordon has never been an owner, employee or in anyway associated with HHG.

---

[1] In fact, the Appellants submit that the exact relationship between Extreme and HHG was never fully disclosed.

2

At some point, WWE began to use assets acquired from the Debtor in its various wrestling exhibitions, television programs, videotapes and pay-for-view and/or "On-Demand" programming. In addition to using assets of the Debtor, WWE also used the Extreme Footage and the Eastern Footage. As a result of the public use of the Eastern Footage and the Extreme Footage, on or about the beginning of 2005, Gordon and Eastern, through their counsel, contacted the WWE objecting to WWE's use of the Eastern Footage and demanding that WWE immediately cease using the Eastern Footage. WWE informed counsel for Eastern and Gordon that it had purchased the Eastern Footage from the Debtor's estate and would continue to use the Eastern Footage.[2]

**PROCEDURAL HISTORY**

The Debtor in this matter filed a petition for reorganization under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101, et seq. (the "Bankruptcy Code") on April 5, 2001 in the United States Bankruptcy Court for the Southern District of New York. On June 20, 2001, the Debtor's case was converted to case under Chapter 7 of the Bankruptcy Code. On June 22, 2001, Barbara Balaber-Strauss was duly appointed and qualified as the interim Chapter 7 Trustee (the "Trustee").

Subsequently, the Trustee entered into the Asset Purchase Agreement, dated January 28, 2003 (the "APA") wherein she agreed to sell to WWE certain assets of the Debtor. A true and correct copy of the APA is attached hereto as Exhibit "A." On March 14, 2003, a hearing was held with respect to the Trustee's proposed sale of assets to the Appellee. On June 17, 2003, the Court entered the Order approving the sale of the assets

---

[2] This was the first time that either Gordon or Eastern became aware of WWE's alleged claim of ownership of the Eastern Footage.

to the Appellee (the "Sale Order"). A true and correct copy of the Sale Order is attached hereto as Exhibit "B."

On October 11, 2005[3], after the Appellants discovered that the Eastern Footage was allegedly conveyed to the Appellee, the Appellants filed their Motion To Enforce and Interpret Order Dated June 17, 2003 Pursuant to 11 U.S.C. §§ 105 and 363 Approving Sale of Assets to World Wrestling Entertainment, Inc. (the "Motion"). A true and correct copy of the Motion is attached hereto as Exhibit "C." On November 4, 2005, the Appellee filed its Objection of World Wrestling Entertainment, Inc. to Motion of Eastern Championship Wrestling and Tod A. Gordon to Enforce and Interpret Order Dated June 17, 2003 Pursuant to 11 U.S.C. §§ 105 and 363 Approving Sale of Assets to World Wrestling Entertainment, Inc. (the "Objection"). A true and correct copy of the Objection is attached hereto as Exhibit "D." The Appellee in opposition to the Motion also filed an Affidavit disputing certain facts alleged by the Appellants in their moving papers. To "flesh out" the disputed facts, the Appellants requested discovery of the Affiant,[4] which the Appellee opposed.

The Motion was initially brought before the Bankruptcy Court at the Appellants' request for a teleconference to address a simple discovery issue raised by the Motion and the Appellee's opposition to the Appellants' request for discovery. A teleconference with the Bankruptcy Court was held on November 11, 2005. In support of its opposition to the discovery request, the Appellee argued to the Bankruptcy Court in the teleconference that

---

[3] The Appellants submit that the delay from the beginning of 2005 until October was occasioned by various discussions between the parties to resolve this matter.

[4] The Affiant was, as set forth above, Heyman. Heyman was the principal of the Debtor, moreover, he is now and was at the time the Affidavit was given an employee of the Appellee under a contractual arrangement.

4

277426-2

no discovery was necessary, but in fact that the matter could be decided as a matter of law based on three legal theories asserted in the opposition papers:

> THE COURT: Can I accept the facts as asserted by the [M]ovant and ignore Mr. Hayman's [sic] affidavit and decide the [M]otion as far as you're concerned.
> MR. RICH: Yes, you can, Your Honor.

<u>Transcript of Teleconference re: Discovery Dispute before the Honorable Adlai S. Hardin, Jr. United States Bankruptcy Judge, dated November 21, 2005</u> ("Transcript") at p. 5, lines 23-25 and p. 6, line 1. A true and correct copy of the Transcript is attached hereto as Exhibit "E." The Appellee took the position that three of its legal theories, *res judicata*, equitable estoppel and Rule 60 were sufficient to defeat the Motion, even if the facts as set forth by the Appellants were correct and uncontested:

> MR. RICH: We believe, Your Honor—let me put it this way. Even if the [T]rustee did not have title to this asset. . . [Movants] have lost their right to argue that point and therefore you could accept the facts in [Movants'] affidavit as true for the purposes of ruling on this motion.

Transcript at p. 7, lines 1-5.

Pursuant to the Bankruptcy Court's instruction, the Appellants filed their Memorandum of Law in Response to the Appellee's Objection on December 23, 2005. The Appellee filed its Reply Brief on January 20, 2006.

On April 4, 2006, the Bankruptcy Court held a hearing on the Motion. At the hearing, in the face of its own presumption that the facts as alleged by the Appellants were deemed correct, the Bankruptcy Court summarily denied the Motion based solely on the Sale Order. The Appellants requested that the Bankruptcy Court make specific findings of fact and conclusions of law in support of its denial of the Motion. The Bankruptcy Court instructed the Appellee to draft proposed Findings of Fact, Conclusions of Law and a Form of Order.

5

277426-2

On April 19, 2006, the Appellee, inter alia, filed its proposed Findings of Fact, Conclusions of Law and a Form of Order. By agreement of the parties and with the approval of the Bankruptcy Court, the Appellants were to file their Counter-proposed Findings of Fact, Conclusions of Law and a Form of Order on or before May 3, 2006. On May 2, 2006, the Bankruptcy Court, prior to the deadline for the Appellants to file their Counter Proposed Findings of Fact and Conclusions of Law and proposed Form of Order, entered Appellee's proposed form of Order denying the Motion (the "Order") and adopted Appellee's proposed Findings and Fact and Conclusions of Law. A true and correct copy of the Order is attached hereto as Exhibit "F." On May 3, 2006, Appellants timely filed their Counter-Proposed Findings of Fact, Conclusions of Law and Form of Order. On May 5, 2006, the Bankruptcy Court, having considered Appellants' Response and Counterproposal, again adopted the Appellee's proposed Findings of Fact and Conclusions of Law with no regard to the Appellant's counterproposals.[5] The Appellants filed a timely Notice of Appeal on May 12, 2006.

**STANDARD OF REVIEW**

In an appeal from the bankruptcy court, the district court reviews the bankruptcy court's conclusions of law de novo while findings of fact must be clearly erroneous to be overturned by the district court. *H & C Dev. Group, Inc. v. Miner (In re Miner)*, 229 B.R. 561, 564-5 (E.D.N.Y. 1999). *Accord*, *In re Ionosphere Clubs*, 922 F.2d 984, 988-89 (2d Cir. 1990), *cert. denied*, 502 U.S. 808 (1991). As the Bankruptcy failed to adopt the facts presumed accepted by instruction of the Bankruptcy Court at the November 15, 2005 teleconference, specifically, that the Appellants are the owners of the Eastern

---

[5] In fact, the Bankruptcy Court completely failed to make the factual findings that it deemed presumed as true during the November 15, 2005 teleconference.

6

277426-2

Footage, the Order must be viewed as being based on the Bankruptcy Court's conclusions of law. Therefore the appropriate standard of review for this appeal is de novo. *Id.*

**SUMMARY OF ARGUMENT**

The issue before this Court is whether the Eastern Footage as property of the Appellants and not property of the Debtor's estate may be sold by the Trustee with the Bankruptcy Court's approval and without sufficient notice and the informed consent of the owners of the property.

The Bankruptcy Code defines property of the estate as "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). The Bankruptcy Code provides that a "trustee, after notice and a hearing, may … sell … other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). However, for the purposes of the Motion, the Bankruptcy Court was not called on to make a factual determination as to whether or not the Eastern Footage was property of the Debtor's estate. The only issue before the Bankruptcy Court was whether a trustee can sell assets in which a debtor does not have an interest. A bankruptcy trustee is not authorized to sell assets that are not property of the estate. 11 U.S.C. § 101 et seq. A bankruptcy court is a court of limited jurisdiction. In the instant matter, the Bankruptcy Court lacked subject matter jurisdiction over the Eastern Footage, and did not have personal jurisdiction over the Appellants in matters unrelated to the Debtor's bankruptcy case.

Furthermore, the Bankruptcy Court cannot divest the Appellants of their property rights without due process of law, to do so violates the Fifth Amendment of the United States Constitution. The notice given by the Trustee of the sale was insufficient as it

7

would not have put a reasonable person in the Appellants position on notice that the sale was intended to transfer the Eastern Footage.

Additionally, even if the Bankruptcy did have jurisdiction and the notice did meet the requirements of due process, the Sale Order and the APA, based on the plain language of each, did not transfer ownership of the Eastern Footage.

The Bankruptcy Court erred when it entered the Order because it did not have jurisdiction to authorize a sale of the Eastern Footage and the requirements of due process were not met. However, even if the Bankruptcy Court has jurisdiction to authorize a trustee to sell non-debtor property and the requirements of due process were met, based on the plain language of the APA and the Sale Order and the rules of contract interpretation no transfer of the non-debtor property was intended or resulted.

**ARGUMENT**

**The Bankruptcy Court Exceeded Its Limited Jurisdiction When It Authorized The Sale of Assets Which Are Not Property of The Debtor's Estate.**

A determining issue as to whether the Bankruptcy Court has jurisdiction over the Eastern Footage and the Appellants as owners of the Eastern Footage is whether the Eastern Footage is property of the Debtor's estate. The Bankruptcy Court granted WWE's request to forego discovery based on WWE's assurance to the Bankruptcy Court that even assuming the facts as stated by the Appellants, namely that the Eastern Footage was not property of the Debtor's estate, the Bankruptcy Court had jurisdiction to authorize and approve the sale of the Eastern Footage and that the Sale Order precluded the Appellants from asserting their ownership rights over the Eastern Footage. The Bankruptcy Court, without providing the parties with an opportunity to take discovery and relying on the parties pleadings, made its conclusions of law based on the assumption

8

that the Eastern Footage is not property of the estate and without making any contrary findings of fact.

The Bankruptcy Court erred in finding as a matter of law that a bankruptcy court can approve the sale of non debtor assets by a chapter 7 trustee. A condition for approval of a sale by a trustee or debtor-in-possession under Section 363 of the Bankruptcy Code is "that property being sold be at least partially property of the estate." *In re Eber-Acres Farm*, 82 B.R. 889, 892 (Bankr. E.D. OH 1987), *see also*, 11 U.S.C. § 363(b)(1). The plain language of Section 363 of the Bankruptcy Code only authorizes a "trustee, after notice and a hearing, [to] sell … property of the estate." 11 U.S.C. § 363(b)(1). The Bankruptcy Code defines property of the estate as "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). In the instant matter the Appellants have asserted and the Bankruptcy Court assumed for the purpose of determining the Motion, that the Debtor did not have any interest in the Eastern Footage at the time of the commencement of the case.

Former Chief Justice Rehnquist wrote that "the preeminent canon of statutory interpretation requires us to 'presume that [the] legislature says in a statute what it means and means in a statute what it says there.'" *BedRoc Ltd., LLC v. United States*, 541 U.S. 176, 183 (2004) (citations omitted). Furthermore, Justice Kennedy states that courts when called upon to interpret a federal statute "should prefer the plain meaning since that approach respects the words of Congress." *Lamie v. United States Trustee*, 540 U.S. 526, 536 (2004). Reading Section 363, and the Bankruptcy Code as a whole, under the guidance provided by the Supreme Court, namely that the plain meaning should be preferred and that the statutes say what Congress intended them to say, the Bankruptcy

9

277426-2

Code cannot be read in a way that authorizes a bankruptcy court to approve the sale of property which is not property of a debtor's estate. 11 U.S.C. § 101 *et seq*. Nowhere in the Bankruptcy Code is there any provision authorizing a trustee to sell property in which the debtor does not have an interest. *Id*.

"It is axiomatic that the Bankruptcy Courts are Courts of limited jurisdiction." *In re Parr*, 4 B.R. 646, 648 (Bankr. E.D.N.Y. 1980). *See also*, *Sea Hawk Seafoods, Inc. v. Alaska (In re Valdez Fisheries Dev. Assoc)*, 439 F.3d 545, 549 (9th Cir. 2006). "The powers of the Bankruptcy Court cannot exceed those expressly conferred by Congress and those deemed necessary to effect jurisdiction." *Id* (citations omitted). All federal courts are courts of limited jurisdiction and, for the most part, the jurisdiction is conferred on the federal courts by Congress. *Bass v. Denney (In re Bass)*, 171 F.3d 1016, 1022 (5th Cir. 1999). A bankruptcy court's jurisdiction is wholly "grounded in and limited by statute." *Id*. The Congress in "28 U.S.C. § 1334(b) grants jurisdiction to the district courts and adjunct bankruptcy courts to entertain proceedings 'arising under,' 'arising in a case under,' or 'related to' a case under Title 11 of the United States Code, i.e. proceedings 'related to' bankruptcy." *Id*. In no way can assets which the Debtor does not own, are not property of the Debtor's estate, and the Debtor has no interest be construed to "relate to" the Debtor's bankruptcy case. "[B]ankruptcy courts have no jurisdiction over proceedings that have no effect on the estate of the debtor." *Celotex Corp. v. Edwards*, 514 U.S. 300, 308 (1995). The question for the Bankruptcy Court and the WWE is how assets, which the Debtor does not own, are not property of the Debtor's estate, and the Debtor does not have an interest have an effect the administration of the

Debtor's estate. In short, the Bankruptcy Court erred by extending its jurisdiction to cover the sale of property outside of the debtor's estate.

**The Bankruptcy Court's Entry of The Sale Order Is In Violation of The Fifth Amendment To The United States Constitution As Eastern And Gordon Were Deprived of Their Property Without Due Process of Law And Without Just Compensation.**

The Fifth Amendment to the United States Constitution provides that "no person shall be deprived of life, liberty, or property, without due process of law; nor shall private property be taken for public use, without just compensation." *U.S. Const. amend. V*. The entry of the Sale Order authorizing the Trustee to sell the Eastern Footage to WWE as confirmed by the Order denying the Motion is an action of an arm of the United States government to deny the Appellants of their constitutionally guaranteed right to be secure in the knowledge that the government cannot divest them of their property rights without due process of law. Congress "may authorize the bankruptcy court to affect [] property rights, provided the limitations of the due process clause are observed." *Wright v. Union Cent. Life Ins. Co.*, 304 U.S. 502, 518 (1938).

One fundamental element of due process is notice. "Many controversies have raged about the cryptic and abstract words of the Due Process Clause but there can be no doubt that at a minimum they require that deprivation of life, liberty or property by adjudication be preceded by notice and opportunity for hearing appropriate to the nature of the case." *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 313 (1950). Notice is a required element for basic due process in addition to being a basic requirement of a sale outside the ordinary course by a bankruptcy trustee under Section 363(b) of the Bankruptcy Code. 11 U.S.C. § 363(b)(1). In this case, the notice provided to the Appellants was so flawed and woefully insufficient that not only was it insufficient

11

as specifically required under Section 363(b) of the Bankruptcy Code, but it was so vague and misleading that the basic requirements of due process have not been met.  The Supreme Court in *Mullane* stated that "when notice is a person's due, process which is a mere gesture is not due process."  *Id.* at 315.  In this case, the notice give to Appellants hardly even rises to the level of a "mere gesture."  Nowhere in the documents served by the Trustee, in the APA or anywhere on the Bankruptcy Court's docket for the Debtor's case related to the sale to the Appellee is Eastern ever named until the Appellants filed the Motion.

During argument in the Bankruptcy Court on the Motion, the Appellants conceded that they had actual notice of the Trustee's request for authorization to sell certain assets of the Debtor's estate to WWE, but argued that the notice was insufficient to put them on notice that the Trustee was selling assets which were not part of the Debtor's estate but were, in fact, property of the Appellants.[6]  The APA and the Sale Order never make any reference to Eastern either directly or indirectly.  The APA does reference "ECW" but does so immediately next to and in the same sentence with the phrase "Extreme Championship Wrestling" and in a bankruptcy case that is captioned as "HHG Corp., a/k/a Extreme Championship Wrestling."  This vague and undefined use of terms would not lead a reasonable person, and did not lead the Appellants, to believe that the Trustee was selling the Eastern Footage.

---

[6] The Appellants refer the Court to the Affidavit of Service filed by the Trustee related to the request for authority to sell certain assets of the Debtor's estate to WWE which does not list either of the Appellants as having been served notice of the request, the APA or the proposed form of Order authorizing the sale to WWE.

12

277426-2

Furthermore, WWE in the Objection[7] states and admits that after 1994 "the initials 'ECW' were used solely to identify Extreme." Paragraph 5 on page 3 of the Objection. WWE cannot say in one breath that "ECW" only refers to Extreme and then say that notice which only implicates Extreme and "ECW" should have put the Appellants on notice that the Trustee was selling assets of Eastern.

If it was the intent to sell the Eastern Footage why not mention Eastern by name and serve Eastern's designated representative? To do so would not have caused the Trustee, the Debtor's estate or WWE any hardship or any significant cost. Moreover, it is especially disconcerting that in WWE's response to the Motion it makes no averments as to any transfer of the Eastern assets to Extreme and from Extreme to HHG nor does WWE make any averments that Eastern and Extreme merged or that Extreme or the Debtor are the successors of Eastern. WWE only makes a cryptic and unsubstantiated reference to Eastern having "folded" into HHG. Paragraph 11 on page 4 of the Objection.

For a notice to be sufficient to meet the standards necessary to protect the Appellants' constitutionally guaranteed rights under the Fifth Amendment to the United States Constitution and the specifically annunciated requirement for notice in Section

---

[7] WWE in the Objection asserted that the Sale Order prohibited the Appellants from asserting their ownership rights as to the Eastern Footage by operation of the doctrine of *res judicata*. For the doctrine of *res judicata* to apply the Sale Order must have been rendered in accordance with the requirements of due process. *Windsor v. McVeigh*, 93 U.S. 274, 277-78 (1876).

Additionally, WWE argued that the Appellants' were barred from challenging the Sale Order by the one (1) year limit contained in Federal Rule of Civil Procedure 60(b). However, the one (1) year limit does not apply to all of the provisions of Rule 60(b). Fed R. Civ. Pro. R. 60(b). Rule 60(b) provides that the party seeking relief from the order shall file a motion seeking such relief "within a reasonable time, and for reasons (1), (2), and (3) not more than one year after the judgment, order, or proceeding was entered or taken." Id. In the instant matter, the Appellants are not seeking relief under Rule 60(b)(1)-(3) but are, in fact, seeking relief based on facts described in Rule 60(b)(4) and (6) which provides that a party may have relief from a final order when "(4) the judgment is void … or (6) any other reason justifying relief." Id. Here, the Appellants have sought relief from the Sale Order based on the fact that Sale Order is void because the Bankruptcy Court lacked jurisdiction, the Appellants were denied due process and the APA and the Sale Order do not on their face transfer the Eastern Footage.

13

277426-2

363(b) of the Bankruptcy Code, the notice must be sufficient, at bear minimum, to put the parties whose rights are being altered on notice that further inquiry on their part is required. In the instant matter, the notice never gave the Appellants any inkling that their property, which was not property of the Debtor's estate and which the Debtor never had a legal or equitable interest in, was being sold by the Trustee to WWE.

The Bankruptcy Court erred when it extinguished the Appellants' ownership rights without giving them an opportunity to assert their right to due process of law guaranteed by the 5th Amendment to the United States Constitution.

**The Bankruptcy Court Erred When It Held That The Sale Order And The APA Granted Ownership Of The Eastern Footage To WWE Even Though It Was Not Property Of The Estate And The Trustee Did Not Have Legal Authority To Sell Assets Of The Appellants**

In addition to the Bankruptcy Court's limited jurisdiction to sell property of a debtor's estate, it is clear based on the language of the APA and the Trustee's own statements that she never intended and did not have the legal right to sell assets that were not property of the debtor's estate. The Trustee stated that she "only had the right to convey property of the estate and the [APA] only conveyed property of the estate." Paragraph 3 on page 2 of the Chapter 7 Trustee's Response to Motion of Eastern Championship Wrestling, Inc. and Tod A. Gordon (the "Trustee's Response"). A true and correct copy of the Trustee's response is attached hereto as Exhibit "G." In the APA, a document negotiated and drafted by the Trustee and WWE, the assets being sold by the Trustee and purchased by WWE are defined as "all of the Trustee's right, title and interest in and to the Estate's assets, properties, privileges, rights and interest." Paragraph (a) on page 2 of the APA. The description of the assets to be transferred pursuant to the terms of the APA was augmented in the APA to clarify that the sale assets

14

included "any and all intellectual property owned by the Estate or used by the Debtor in connection with the Debtor's professional wrestling business including without limitation the name 'Extreme Championship Wrestling', 'ECW' and variants thereof, … the entire ECW library of footage." Paragraph (a)(i) on page 2 of the APA. Under New York law, "it is well settled that 'when parties set down their agreement in a clear, complete document, their writing should . . . be enforced according to its terms.'" *South Rd. Assocs., LLC v. IBM*, 4 N.Y.3d 272, 277 (N.Y. 2005).

WWE relies on this language when it asserts that it is the owner of the Eastern Footage, however, the term "ECW library of footage" is not a defined term nor is "ECW" a defined term. This lack of definition combined with WWE's acknowledgment that the "the initials 'ECW' were used solely to identify Extreme" clearly shows that the Trustee and WWE never intended to transfer the Eastern Footage pursuant to the APA. Paragraph 5 on page 3 of the Objection. Under New York law it is well settled that when reviewing a contract the court should "ascertain the intention of the parties at the time they entered into the contract. If that intent is discernible from the plain meaning of the language of the contract, there is no need to look further." *Evans v. Famous Music Corp.*, 1 N.Y.3d 452, 458 (N.Y. 2004). No party reading the APA would have any reason to believe that "ECW" refers to Eastern. Eastern Championship Wrestling is not referred to anywhere in the APA nor does the word Eastern appear anywhere in the APA. Furthermore, the initials ECW have, by the Appellee's own admission, for a period of seven (7) years prior to the date of the Sale Order only referred to Extreme and the Debtor trading as Extreme Championship Wrestling. Paragraph 5 on page 3 of the Objection.

In short, the actions of the Trustee and the Appellee support the conclusion that the parties did not intend to sell or purchase non-debtor property.

**CONCLUSION**

For all of the reasons set forth above the Appellants respectfully request that this Court enter an order finding that the Sale Order and the APA did not transfer title to the Eastern Footage as the Bankruptcy Court lacked jurisdiction over the Eastern Footage or in the alternative that the Sale Order is void as to the Appellants for lack of due process or in the alternative interpreting the Sale Order and the APA have excluded from the list of assets sold to WWE by the Trustee the Eastern Footage and for such other and further relief as is just and equitable.

Dated: White Plains, New York  
       July 21, 2006

SPECTOR GADON & ROSEN, P.C.  
Attorneys for Eastern Championship  
Wrestling, Inc and Tod A. Gordon

**/S/  TIMOTHY J. SZUHAJ**

By:_____  
    Stephen P. Pazan, Esquire  
    Michael J. Shavel, Esquire  
    Timothy J. Szuhaj, Esquire  
    D. Andrew Bertorelli, Jr., Esquire  
    1000 Lenola Road  
    P.O. Box 1001  
    Moorestown, NJ 08057  
    (856) 778-8100