UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------X

In re:                                              Chapter 7
                                                    Case No. 01 B 11982 (ASH)
HHG CORP., A/K/A EXTREME
CHAMPIONSHIP WRESTLING,

---------------------------------------------------------------X

**ORDER PURSUANT TO 11 U.S.C. §§ 105 AND 363** APPROVING SALE OF
ASSETS TO WORLD WRESTLING ENTERTAINMENT, INC.

      Upon entry of the Order (the "Sale Order") dated February 5, 2003 (1) Scheduling a Hearing on the Sale of Assets (the "Sale Motion"), (2) Approving Form and Method of Notice of the Hearing on the Trustee's Sale of Estate Assets, and (3) Approving Bidding Procedures; and upon the record of the hearing (the "Sale Hearing") held on March 14, 2003 on the sale of assets of the Debtor's estate pursuant to the Asset Purchase Agreement dated as of January 28, 2003 (the "Asset Purchase Agreement") between Barbara Balaber-Strauss ("Trustee") and World Wrestling Entertainment, Inc. (WWE"), a copy of which was annexed to the Notice of Presentment of Order: 1) Scheduling a Hearing on the Trustee's Sale of Estate Assets; 2) Approving Form and Method of Notice of the Sale of Estate Assets and 3) Approving Bidding Procedures dated January 28, 2003; and upon the terms of the Asset Purchase Agreement; and this Court having found that WWE has made the highest and best offer (the "WWE Offer"), which after negotiation, has been accepted by the Trustee; and it having been demonstrated to the satisfaction of the Court that the WWE Offer and the Trustee's entry into and carrying out of the terms of the Asset Purchase Agreement are in the best interests of the Debtor, its estate and creditors; and a Limited Objection to the Sale Motion having been filed with this Court by Eugene R. Boffa, Jr., Eugene Ciarkowski, and Steven Karel (the "Individual Objecting Parties"),

which limited objection has been overruled or withdrawn at the Sale Hearing; and a further hearing (the "Sale Order Hearing") having been held on April 4, 2003 to consider objections to the order approving the sale of assets to WWE; and an Objection to Settlement of Order dated March 26, 2003 and Reply Brief dated April 2, 2002 being filed by Powersports Video Productions, California Technology, Inc. ("Powersports"), and an Objection to Settlement of Order dated March 26, 2003 and Response to Trustee's Reply dated April 3, 2003 filed by Delta Music Plc ("Delta Music"); and upon the Response of World Wrestling Entertainment, Inc. to Objections of Powersports and Delta Music to Proposed Sale Order dated April 3, 2003; and upon the Trustee's Reply to the Objection of Settlement of Order Approving Sale of Assets to World Wrestling Entertainment, Inc. as filed by Delta Music Plc, and the Trustee's Reply to Objection to Settlement of Order Approving Sale of Assets to World Wrestling Entertainment, Inc. as Filed by Powersports Video Productions dated April 3, 2003; and the objections of Powersports and Delta Music having been resolved pursuant to a Stipulation and Order Settling Claims dated June 17, 2003 (the "Powersports/Delta Music Stipulation"); and a further hearing having been held on June 17, 2003 (the "Final Sale Order Hearing"); and good and sufficient cause appearing therefor;

IT IS HEREBY FOUND AND DETERMINED AS FOLLOWS:

A.      The Debtor filed a petition for reorganization under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§101, et seq. (the "Bankruptcy Code") on April 5, 2001 in the United States Bankruptcy Court for the Southern District of New York.  On June 20, 2001, the Debtor's chapter 11 case was converted to a case under chapter 7 of the Bankruptcy Code.  On June 22, 2001, Barbara Balaber-Strauss was duly appointed and qualified as the chapter 7 trustee.

B.  The Court has jurisdiction to consider the Sale Motion and the relief requested therein in accordance with 28 U.S.C. §§157 and 1334.  Consideration of the Sale Motion and the relief requested therein is a core proceeding pursuant to 28 U.S.C. §157(b).  Venue before this Court is proper pursuant to 28 U.S.C. §§1408 and 1409.  This is a core proceeding pursuant to 28 U.S.C. §§157(b)(2)(A), (N) and (O).

C.  On January 28, 2003, the Trustee entered into the Asset Purchase Agreement whereby she agreed to sell to WWE the Assets (as defined in the Asset Purchase Agreement).

D.  The Trustee has duly and properly given notice of the transactions contemplated by the Asset Purchase Agreement as required by Sections 363(b), 363(f), 363(m) and 365(a) of the Bankruptcy Code and Rules 2002(a)(2), (c)(1), (i) and (k), 6004(a) and (c), and 6006(c) of the Federal Rules of Bankruptcy Procedure as required by the Sales Procedure Order.

E.  In accordance with Sections 363(b) and (f) of the Bankruptcy Code and applicable law, as set forth in the Sale Motion and based upon argument of counsel at the Sale Hearing, the Trustee has advanced good business reasons for entering into the Asset Purchase Agreement.

F.  A reasonable opportunity to object or be heard regarding the relief requested in the Sale Motion and to make higher or better offers to purchase the Assets has been provided.

G.  The transactions contemplated by the Asset Purchase Agreement have been negotiated in good faith, and the parties to the Asset Purchase Agreement have acted in good faith.

H.  All of the transactions contemplated by the Asset Purchase Agreement are in the best interests of the Debtor's creditors and its estate.

I.  The Asset Purchase Agreement is the result of arm's length bargaining by the parties thereto and constitutes the highest or best offer for the sale of the Assets and WWE is

entitled to the protection of a good faith purchaser pursuant to Section 363(m) of the Bankruptcy Code.

J.        Nothing in the Asset Purchase Agreement or the transactions contemplated thereby would constitute WWE as a successor to the Debtor.

IT IS HEREBY ORDERED, ADJUDGED AND DECREED AS FOLLOWS:

1.        The Sale Motion is granted in all respects and any objections to the Sale Motion have been resolved, withdrawn or overruled in accordance with the terms of this Order and as set forth in the record of the Sale Hearing, the Sale Order Hearing and the Final Sale Order Hearing.

2.        The Asset Purchase Agreement be and it hereby is approved.

3.        The Trustee is hereby authorized and directed to take all steps necessary or appropriate to carry out the terms and intent of the Asset Purchase Agreement, including, without limitation, the sale and transfer of the Assets to WWE and the execution and delivery of all documents necessary to effectuate the terms and conditions of the Asset Purchase Agreement.

4.        The sale pursuant to this Order and the Asset Purchase Agreement will vest WWE, as purchaser, with all of the Debtor's right, title and interest in and to the Assets, of whatever kind or nature or wherever located, free and clear of any and all Liens (as defined in the Asset Purchase Agreement), claims, liabilities, obligations (including, without limitation, competing claims to title of the Assets and claims of taxing authorities), licenses, interests, encumbrances, pledges, security interests or charges of any kind (collectively, the "Claims"), except for Permitted Liens (as defined in the Asset Purchase Agreement), which Claims, if any, shall transfer, affix and attach to the proceeds of the sale, in the order of their priority with the same force, validity and effect as they now may have against such Assets.  All persons purporting to hold, or holding any Claims with respect to the Assets shall be, and they hereby are, forever enjoined and barred from asserting such Claims against WWE, or any of its

successors and/or assigns.  The immediately preceding sentence includes, without limitation, any rights under any distribution agreements or license agreements or sublicense agreements granted thereunder which have been alleged to exist or asserted prior to the date hereof and all parties to any such purported agreements, including, without limitation, PowerSports International, Powersports Video Productions, California Compact Technology, Inc., and Delta Music Plc and their licensees and sublicensees, have no further rights under such purported agreements as against WWE, or any of its successors and/or assigns.

5. The Assets include, without limitation, copyright ownership of the entire ECW library of footage and no party including, without limitation, Tod Gordon or any affiliate, has any Claim against the ECW library.  The Asset Purchase Agreement provides that the representations and warranties of Seller and Buyer shall not survive the Closing under the Asset Purchase Agreement and therefore, as between Buyer and Seller, at the Closing the Assets will be delivered "as is," "where is;" provided, however, that nothing contained in this sentence will limit any of the protections afforded the parties in this Order.

6. At the Closing, under the Asset Purchase Agreement, WWE will assume the Assumed Liabilities (as defined in the Asset Purchase Agreement).  Except for the Assumed Liabilities, the sale of the Assets hereunder does not and will not subject WWE or any affiliate, successor or assign thereof, to any liability by reason of such transfer under the laws of the United States, any state, territory or possession thereof based in whole or in part, directly, indirectly, under any theory of successor or transferee liability or any liability for the pre- and post-petition claims against the Debtor, its estate or the Trustee, including, without limitation, pre- and post-petition claims of the Internal Revenue Service or any other federal, state or local government entity.  Each creditor of the Debtor is hereby barred and enjoined from the commencement or continuation of an action, the employment of process, or any act to collect,

recover or offset any Claim against WWE or any of its affiliates, successor and assigns. As used in this paragraph, Claims against the Debtor include claims against any officer, director or agent of the Debtor or Trustee or claims by such persons against the Debtor or Trustee.

7. Notwithstanding any other provision of this Order or any provision of the Asset Purchase Agreement, nothing contained in this Order shall prejudice any rights WWE may have under the Asset Purchase Agreement and WWE expressly retains any and all such rights.

8. The Trustee is authorized to execute such documents and do such things as may be necessary and appropriate to effect, implement and consummate the Asset Purchase Agreement.

9. The provisions of this Order authorizing the sale of the Assets free and clear of Claims shall be self-executing, and neither the Debtor nor WWE shall be required to execute or file releases, termination statements, assignments, consents, or other instruments in order to effectuate, consummate and implement the foregoing provisions; provided, however, that this paragraph shall not excuse such parties from performing any and all of their respective obligations under the Asset Purchase Agreement.

10. The provisions of this Order and the Asset Purchase Agreement shall be binding upon and inure to the benefit of WWE, the Debtor, the Trustee, all holders of Claims, and affected third parties and the respective successors and assigns of each of the foregoing and any person receiving this Order.

11. WWE is hereby determined to be a good faith purchaser under Section 363(m) of the Bankruptcy Code in connection with the Asset Purchase Agreement, and WWE shall be entitled to the protections afforded to a good faith purchaser under that section.

12. Any finding set forth in this Order that is a conclusion of law shall be deemed a conclusion of law incorporated by reference in these conclusions of law as though fully set forth herein.

13. This Court shall retain jurisdiction to enforce, implement, and interpret the provisions of this Order and the Asset Purchase Agreement in all respects and any matter arising from or related to the Asset Purchase Agreement or this Order, including, without limitation, jurisdiction to protect WWE against any liabilities that are not Assumed Liabilities, and to defend the Assets against Claims other than Permitted Liens, or otherwise in accordance with the provisions of the Asset Purchase Agreement or this Order, and to hold any person in contempt for violating this Order.

14. The terms and provisions of this Order shall not constitute a finding of any kind that any of the Objecting Parties, either individually or in any other capacity, committed any act of fraud, negligence, or conversion in connection with any loans made by Annodeus to the Debtor. Any and all rights and defenses that may be maintained or asserted by the Individual Objecting Parties are preserved and remain unaffected by this Order.

15. This order shall be of no force and effect until an order is entered by this Court approving the Powersports/ Delta Music Stipulation (the "Settlement Order") and the Settlement Order has become a final and non-appealable order.

Dated: White Plains, New York
       June 17, 2003

                                            /s/ Adlai S. Hardin, Jr.
                                                    United States Bankruptcy Judge